**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KATHERINE BARTOL,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-00180** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **DAUPHIN COUNTY d/b/a DAUPHIN** | : | |
| **COUNTY JUDICIAL CENTER** | : | |
| **BOOKING FACILITY PRISON, et al.,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Plaintiff Katherine Bartol ("Plaintiff") commenced this action in February 2021. (Doc. No. 1.) In her operative, first amended complaint, Plaintiff asserts due process, excessive force, and related claims against Dauphin County d/b/a Dauphin County Judicial Center Booking Facility Prison ("Booking Center") and Correctional Officers Pamela Arbogast, Andrew Burkins, and Scott Grieb ("CO Defendants") (Doc. No. 27). Before the Court are two motions: (1) a motion to dismiss filed by Defendants Burkins and Grieb ("Moving Defendants") pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. No. 35); and (2) Plaintiff's motion for leave to file a surreply in opposition to the Moving Defendants' motion to dismiss (Doc. No. 40). For the following reasons, the Court will grant in part the Moving Defendants' motion to dismiss (Doc. No. 35) to the extent of dismissing Count II without prejudice and Count IV with prejudice. The Court will deny Plaintiff's motion for leave to file a surreply. (Doc. No. 40.)

**I.      BACKGROUND**

Plaintiff's allegations, which the Court must assume are true for purposes of resolving the Moving Defendants' motion to dismiss, see Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004), establish the following facts. Late one night in April 2019, local police officers initiated a traffic stop of Plaintiff's vehicle because "she was driving without headlights." (Doc. No. 27 ¶

10.)  The officers directed Plaintiff to exit her vehicle and walk a straight line, although Plaintiff was not intoxicated, and then requested that she submit to a breathalyzer test.  (Id. ¶¶ 11-13.) Plaintiff had "facial and dental injuries (including a plastic plate in her mouth) from [her prior] car accident that made it difficult."  (Id. ¶ 13.)  The officers arrested and handcuffed Plaintiff on "minor charges, including DUI," and transported her to the Booking Center for the purpose of obtaining a blood sample.  (Id. ¶¶ 14-16.)

Plaintiff arrived at the Booking Center without her purse or eyeglasses.  (Id. ¶ 17.)  The officers cuffed her ankles, while the CO Defendants "put [her] up against a wall," searched her, and "punched and hit her," bruising her legs and hip.  (Id. ¶¶ 18-20.)  After directing Plaintiff to sit at a table, the CO Defendants "rifled through her coat pockets," removing personal items, including prayer cards and religious medals for which they mocked her, stating, "[o]ooo what's this?"  (Id. ¶¶ 21-22.)  The CO Defendants also found two "alprazolam pills that were prescribed to [a] gravely ill person for whom Plaintiff had been caring."  (Id. ¶ 23.)  The CO Defendants "laughed at Plaintiff and accused her of dealing drugs," disbelieved that the pills were for her friend, and stated, "Book her!"  (Id. ¶¶ 24-25.)  When Plaintiff informed the CO Defendants of her head injuries and the fact that she suffered from severe Post Traumatic Stress Disorder ("PTSD"), they yelled, "[s]hut up and do what you're told."  (Id. ¶ 26.)  Defendant Arbogast had Plaintiff sign a blood-test refusal form.  (Id. ¶ 27.)  Although Plaintiff was confused, the CO Defendants refused to read the form aloud a second time or to let her read the form herself.  (Id. ¶¶ 27-29.)  Plaintiff alleges that one CO Defendant began "chanting and yelling, 'absolutely not, that is a refusal.'"  (Id. ¶ 30.)

The CO Defendants eventually placed Plaintiff in a cell.  (Id. ¶ 31.)  At that point, the CO Defendants began to subject Plaintiff to a course of degrading, threatening, and abusive physical

and verbal conduct, during which conduct she was panic-stricken and crying, the pain in her legs intensifying from the CO Defendants' punches.  (Id. ¶¶ 35-36.)  Plaintiff alleges that Defendant Arbogast: (1) ordered her to remove her shirt and lift up her bra, stating, "[p]eople like you hide drugs in their bras and I want to make sure you're not hiding any"; (2) directed her to "put on a paper shirt so that she 'didn't hang' herself"; (3) stated, with another CO Defendant, "[t]he pretty ones always get off by the judge," and "[s]he makes me sick"; (4) laughed and told her that they were holding her because she did not answer their questions, stating, in chorus with the other CO Defendants, "[s]ee, you don't know"; (5) forcefully "grabbed [her] hand and severely twisted it to take [her] fingerprints"; (6) directed her not to open her bag to check her personal items; and (7) upon her release, "threw [her] shirt at her and told her to change outside[.]"  (Id. ¶¶ 32-34, 37, 42-43, 49-52.)

Plaintiff further alleges that the CO Defendants refused to allow her to make a phone call, "chant[ed] that [she] was the most uncooperative one they had at the Booking Center," and yelled, "[t]hank God I didn't have a freak like her for a teacher."  (Id. ¶¶ 38, 45, 48.)  One CO Defendant "began making growling sounds outside Plaintiff's cell," stating, "Katherine, you're a fucking whiner," adding, "go to hell, you fucking bitch."  (Id. ¶ 40.)  Another or the same CO Defendant yelled, "[w]e hate people like you here," exclaiming "[s]hut the fuck up or I swear I'll beat the hell out of you and you'll never get out of here."  (Id. ¶ 41.)   At about 4 a.m., a male CO Defendant "entered Plaintiff's cell and repeatedly yelled 'Sit' to Plaintiff, as though [she] were a dog," and either the same or the other male CO Defendant told her, "[y]ou will come out and do what you're told and cooperate if you want to get out of here."  (Id. ¶¶ 46-47.)  Plaintiff alleges that because of the CO Defendants' conduct, she suffered severe emotional distress, sustained severe injuries including bruises on her legs and hip, and "suffered and continues to suffer

injuries and damages."  (<u>Id.</u> ¶¶ 69-70, 75, 81, 89, 99, 107, 114, 118-19.)

Based on these allegations, Plaintiff asserts against the CO Defendants (<u>i.e.</u> Arbogast and the Moving Defendants) three causes of action under 42 U.S.C. § 1983 for due process (Count I), excessive force (Count II), and equal protection (Count III) violations, a federal conspiracy claim under 42 U.S.C. § 1985(c) (Count IV), and two state law claims for battery (Count VI) and intentional infliction of emotional distress ("IIED") (Count VII).  (<u>Id.</u> ¶¶ 53-99, 108-119.)   She seeks compensatory and punitive damages, attorney's fees, and litigation costs.  (<u>Id.</u> at 17.)  The Moving Defendants filed their motion to dismiss and a brief in support on January 31, 2022 (Doc. Nos. 35-36), Plaintiff filed a brief in opposition on February 14, 2022 (Doc. No. 37), and the Moving Defendants filed a reply brief on February 18, 2022 (Doc. No. 39).  Plaintiff filed her motion for leave to file a surreply on February 25, 2022 (Doc. No. 40), the Moving Defendants filed a response and brief in opposition to that motion on March 2, 2022 (Doc. Nos. 41-42), and the time for filing a reply brief has expired.  Accordingly, both motions are ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests.  <u>See</u> <u>Phillips v. Cnty. of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008).  When reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  <u>See</u> <u>In re Ins. Brokerage Antitrust Litig.</u>, 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court need not accept legal conclusions proffered as factual allegations.  <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).  Rather, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."

See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Consistent with the Supreme Court's rulings in Twombly and Iqbal, the Third Circuit has identified three steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 556 U.S. at 675, 679).  A complaint is properly dismissed where the factual content in the complaint does not allow a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  See Iqbal, 556 U.S. at 678.

### III.    DISCUSSION

Before turning to the merits of the Moving Defendants' motion to dismiss, the Court addresses a contention upon which their motion to dismiss hinges: they contend that the Court should, in deciding the motion, consider affidavits and transcripts of depositions taken in this case.  (Doc. No. 36 at 9, 11, 13-15, 22.)  The Court disagrees.  When evaluating a Rule 12(b)(6) motion to dismiss as applied to the allegations in a particular complaint, the Court may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." See Guidotti v. Legal Helpers Debt Resol., L.L.C., 716 F.3d 764, 772 (3d Cir. 2013) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).  The affidavits and testimony cited by the Moving Defendants are not contained in or attached to the complaint, do not include matters of public record, and do not constitute undisputedly authentic documents upon which Plaintiff's

claims are based.  Therefore, the Court may not consider those documents in evaluating the merits of the Moving Defendant's motion to dismiss.  See id.; see also Gorton v. Air & Liquid Sys. Corp., 303 F. Supp. 3d 278, 303 (M.D. Pa. 2018) (declining to consider "depositions, i.e., evidence extrinsic to the complaint, in deciding" motions to dismiss); Hertzler v. W. Shore Sch. Dist., No. 1:12-cv-00534, 2013 WL 53982, at *1 (M.D. Pa. Jan. 3, 2013); Gomery v. Versatile Mobile Sys. Inc., No. 1:07-cv-02292, 2008 WL 2357693, at *1 (M.D. Pa. June 4, 2008) (noting impropriety of considering deposition testimony on a motion to dismiss); cf. Grp. Against Smog & Pollution, Inc. v. Shenango Inc., 810 F.3d 116, 122 n.6 (3d Cir. 2016) (noting that a principal "difference[] between a motion to dismiss for lack of subject matter jurisdiction and a motion to dismiss for failure to state a claim" is that "a court may consider evidence beyond the pleadings such as testimony and depositions when considering" a jurisdiction-based motion to dismiss).

Nor can the Court consider Plaintiff's affidavit, submitted in connection with her motion for leave to file a surreply, in which she raises facts controverting the Moving Defendants' arguments and the contents of the affidavits and testimony upon which they rely.  (Doc. No. 40-2.)  Accordingly, because Plaintiff's motion for leave to file a surreply is based on her request that the Court consider her affidavit in deciding the Moving Defendants' motion to dismiss (Doc. No. 40), the Court declines to grant her leave and will not consider the contents of her affidavit (Doc. No. 40-2).  Having disposed of this preliminary matter, the Court turns to the merits of the Moving Defendants' motion as to each of Plaintiff's claims.

### A.    Federal Claims

Plaintiff asserts her federal claims pursuant to 18 U.S.C. § 1983.  Section 1983 is the vehicle by which private citizens can seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subject, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  Section 1983 "does not . . . create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws."  See Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim for relief under § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States" and "show that the alleged deprivation was committed by a person acting under color of state law."  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

As to all four of Plaintiff's federal claims (Counts I-IV), the Moving Defendants argue that Plaintiff has failed to establish any violations of her constitutional rights under § 1983 and, further, that qualified immunity shields them from liability.  The Court will address the Moving Defendants' arguments concerning the facial sufficiency of Plaintiff's claims before evaluating their affirmative defense of qualified immunity.

### 1.      Fourteenth Amendment Due Process Claim (Count I)

In Count I of her amended complaint, Plaintiff alleges that the CO Defendants (Arbogast and the Moving Defendants) violated her substantive and procedural due process rights by subjecting her, while she was a pretrial detainee, to "physical and/or emotional abuse" wholly unrelated to a legitimate governmental purpose.  (Doc. No. 27 ¶ 57.)  She asserts that the CO Defendants knew that she suffered from PTSD and other injuries but nonetheless repeatedly intimated and frightened her with obscenities, threats, and physical abuse in an effort to exacerbate her emotional state.  (Id. ¶ 59.)  Plaintiff also avers that the CO Defendants retaliated

against her for refusing to submit to a blood test, and that their physical and emotional abuse "was malicious and demonstrated a reckless indifference to Plaintiff's liberty interest, i.e[.], to be safe and free from punishment."  (Id. ¶ 69.)

In asserting that Count I is facially deficient, the Moving Defendants raise two principal contentions: (1) that Plaintiff has failed to plausibly allege the Moving Defendants' personal involvement in the excessive force allegations underlying her complaint; and (2) that Plaintiff has failed to state an excessive force claim because she relies on "unproven accusations of violence by [the Moving Defendants]."  (Doc. No. 36 at 12-15.)  The Moving Defendants argue that Plaintiff has "vaguely accuse[d] [them] of 'physical abuse' and [] says that one or both of them (or someone else entirely) may have hit her hip and legs."  (Id. at 13.)  Relying on affidavits and deposition testimony, the Moving Defendants further argue that none of the conduct alleged in the complaint is true and therefore falls short of adequately alleging their personal involvement in the use of excessive force.  (Id. at 12-15.)

Having reviewed the allegations in the complaint in the light most favorable to Plaintiff, drawing all inferences in her favor, as well as the parties' briefing, the Court concludes that Plaintiff has stated a claim for violations of her substantive due process rights as guaranteed in the Fourteenth Amendment.  It is well-settled that the Due Process Clause of the Fourteenth Amendment "protects pretrial detainees from 'the use of excessive force that amounts to punishment.'"[1]  See Jacobs v. Cumberland Cnty., 8 F.4th 187, 194 (3d Cir. 2021) (quoting Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)).  To plead such a claim, Plaintiff must

---

[1] Regarding Plaintiff's claims of verbal abuse and harassment, such claims generally do not give rise to Fourteenth Amendment violations.  See S.M. v. Lakeland School Dist., 148 F.Supp.2d 542, 551 (M.D. Pa. 2001).  The Court therefore confines its discussion of Count I to whether Plaintiff's allegations of physical force give rise to a Fourteenth Amendment claim.

plausibly allege that the Moving Defendants purposely or knowingly subjected her to objectively unreasonable force while she was a pretrial detainee.  See id.  The standard is one of "objective-reasonableness."  See id.  Whether the use of force was objectively unreasonable "requires 'careful attention to the facts and circumstances of each particular case.'"  See id. (quoting Graham, 490 U.S. at 396).  Such circumstances include: (1) the "relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) any "effort made by the officer to temper or to limit the amount of force"; (4) "the severity of the security problem at issue"; (5) the "threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting."  See id. (quoting Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015)).

Here, Plaintiff alleges that she was that she was confined to a cell for several hours following an arrest and that the Moving Defendants and Defendant Arbogast, all state actors, punched and hit her.  These allegations satisfy the threshold element, required under § 1983, that Plaintiff plead the Moving Defendants' personal involvement in the alleged use of force.  See, e.g., Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002).  Plaintiff further alleges that the use of force was unnecessary, that she sustained severe bruises, that there was no security problem at issue or a reasonably perceived threat, and that she was not actively resisting.  These allegations suffice to state a claim that Moving Defendants purposely subjected her to wholly unprovoked and objectively unreasonable force, all in violation of her substantive due process rights.  See Jacobs, 8 F.4th at 194.  Accordingly, the Court will deny the Moving Defendants' motion to dismiss Count I as to Plaintiff's substantive due process claim.[2]

---

[2] Discovery may reveal, as the Moving Defendants argue, that Plaintiff's alleged injuries are insufficient to prove the level of force required to establish a constitutional violation.  Cf. Burr v. Hasbrouck Heights Police Dep't, 131 F. App'x 799, 803 (3d Cir. 2005) (not precedential)

To the extent Plaintiff asserts a <u>procedural</u> due process claim, however, Plaintiff does not mention that claim anywhere in her briefing and makes only passing reference to the claim in her amended complaint.  (Doc. Nos. 1, 37.)  Specifically, she alleges that, "[a]s a detainee, [her] right to procedural due process was violated by Defendants' physical and emotional abuse."  (Doc. No. 27 ¶ 68.)  That claim sounds in violations of substantive due process rights, and Plaintiff does not otherwise allege that she was deprived of a "protected property interest" without being afforded an adequate "procedure for challenging the deprivation."  <u>See</u> <u>Nicolette v. Caruso</u>, 315 F. Supp. 2d 710, 721 (W.D. Pa. 2003).  Thus, the Court will dismiss in part Count I to the extent of dismissing Plaintiff's procedural due process claim.

### 2.    Fourth Amendment Excessive Force Claim (Count II)

Because Plaintiff alleges that she was a "pretrial detainee" when the Moving Defendants used excessive force against her, she has necessarily failed to state a claim under the Fourth Amendment.  <u>See</u> <u>Leone v. Towanda Borough</u>, No. 3:12-cv-00429, 2012 WL 2590387, at *5 (M.D. Pa. July 3, 2012) (noting that the Fourth Amendment protects against excessive force used during the course of arrest, whereas the Fourteenth Amendment's protections apply once an arrestee becomes a pretrial detainee).  Therefore, the Court will grant the Moving Defendants' motion to dismiss Count II.  However, at this juncture of the proceedings, the Court will not foreclose Plaintiff from asserting, as an alternative to her Fourteenth Amendment claim, an adequately pleaded Fourth Amendment excessive force claim in a second amended complaint.  Whether she was a pretrial detainee at the time force was used is a fact-intensive issue that need

---

(affirming grant of summary judgment as to excessive force claim where officer caused small bruises to the plaintiff's arms but "was objectively reasonable").  Nevertheless, at this stage of the proceedings, construing Plaintiff's allegations in the light most favorable to her, the Court concludes that she has plausibly alleged a substantive due process cause of action.

not be decided as a matter of law at this time,[3] particularly given that the Moving Defendants did not squarely address this issue in their motion papers.  Accordingly, the Court will dismiss Count II without prejudice.

### 3.    Equal Protection Claim (Count III)

Regarding Count III, as they did in addressing Counts I and II, the Moving Defendants base their motion to dismiss on affidavits and deposition testimony that the Court cannot consider in evaluating their motion.  They do not discuss the elements of Plaintiff's equal protection claim.  (Doc. No. 36.)  Absent any specific arguments from the Moving Defendants, the Court concludes that Plaintiff's allegations state a claim for violations of her equal protection rights based on her class-of-one theory of liability.  To plead such a claim, Plaintiff must allege that (1) the Moving Defendants "treated h[er] differently from others similarly situated"; (2) "[they] did so intentionally"; and (3) "there was no rational basis for the difference in treatment."  See Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  Construing the allegations in her complaint in a light most favorable to her, Plaintiff alleges that the Moving Defendants punched and hit her because she was a "pretty" retired teacher.  (Doc. No. 27 ¶¶ 37, 45.)  These allegations suffice to plead that she was intentionally treated differently than others without there being any rational basis for the difference in treatment.  Accordingly, and again given the Moving Defendants' failure to raise any specific arguments challenging whether Plaintiff has sufficiently alleged the elements of this claim, the Court will deny the Moving Defendants' motion to dismiss Count III.

---

[3] The standard for determining when an arrestee becomes a pretrial detainee turns on factors including "the length of time in custody, whether the arrestee has been transferred out of custody of the arresting officers, and whether the arrestee has been arraigned . . . ."  See Leone, 2012 WL 2590387, at *5 (internal quotation marks omitted).

### 4.     Federal Conspiracy Claims (Count IV)

Neither the Moving Defendants nor Plaintiff address the elements of the conspiracy claim

asserted in Count IV pursuant to 42 U.S.C. § 1985.  Nevertheless, the Court will dismiss Count

IV in light of the broad consensus among courts that a plaintiff cannot maintain a class-of-one

equal protection claim pursuant to § 1985, which requires allegations that "the conspiracy was

motivated by race or class-based invidious discrimination."  See Jackson v. Gordon, 145 F.

App'x 774, 778 (3d Cir. 2005) (not precedential); see, e.g., McCleester v. Dep't of Lab. &

Indus., No. 3:06-cv-00120, 2007 WL 2071616, at *15 (W.D. Pa. July 16, 2007) (observing an

"emerging consensus among federal authority . . . fall[ing] against the 'class of one' theory in the

§ 1985(3) context"); Welsh v. Male, No. 05-cv-06838, 2007 WL 906182, at *4 (E.D. Pa. Mar.

22, 2007) (stating that a "'class of one' is not the type of group that could legitimately be

subjected to class-based animus"); see also Cataldo v. Moses, No. 02-cv-02588, 2005 WL

705359, at *19 (D.N.J. Mar. 29, 2005); Overcash v. Shelnutt, 753 F. App'x 741, 746 (11th Cir.

2018) (not precedential); C & H Co. v. Richardson, 78 F. App'x 894, 901 (4th Cir. 2003).  The

Court will therefore dismiss Count IV with prejudice.

### 5.     Affirmative Defense of Qualified Immunity

The Moving Defendants contend that they are entitled to qualified immunity as to all of

Plaintiff's federal claims.  (Doc. No. 21 at 20-21.)  Their contentions, however, hinge on the

affidavits and deposition testimony upon which they rely.  For example, they argue that they

"never improperly (or at all) touched Plaintiff."  (Id. at 20.)  As the Court already discussed,

supra, it cannot consider the affidavits and testimony upon which the Moving Defendants rely

and, therefore, finds the Moving Defendants' qualified immunity arguments unavailing.

Further, the factual allegations in the amended complaint do not support application of

the qualified immunity defense in this case.  "The doctrine of qualified immunity protects
government officials from liability for civil damages unless a plaintiff pleads facts showing
(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly
established' at the time of the challenged conduct."  Wood v. Moss, 572 U.S. 744, 745 (2014)
(internal quotation marks omitted).  The United States Court of Appeals for the Third Circuit has
"cautioned that 'it is generally unwise to venture into a qualified immunity analysis at the
pleading stage as it is necessary to develop the factual record in the vast majority of cases.'"  See
Rankin v. Majikes, 3:14-cv-00699, 2014 WL 6893693, at *10 (M.D. Pa. Dec. 5, 2014) (quoting
Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009) (not precedential)); see also
Taylor v. Rosa, 856 F. App'x 376, 378 n.3 (3d Cir. 2021) (not precedential) (stating, "[b]ecause
qualified immunity is a defense, it will be upheld on a [motion to dismiss] only when the
immunity is established on the face of the complaint" (internal quotation marks omitted) (second
alteration in original)).

Here, Plaintiff has pleaded facts sufficient to overcome the Moving Defendants' defense
of qualified immunity at this stage of the proceedings.  As to the first element required to
establish the defense (statutory or constitutional violations), the Court has already determined
that Plaintiff has adequately pleaded violations of her constitutional rights under Counts I and III.
Regarding the second element, it is well-settled that "[t]he right to be free from an unprovoked
beating is clearly established."  See Hill v. Algore, 85 F. Supp. 2d 391, 409 (D.N.J. 2000); see
also Millar v. Windsor Twp., No. 1:04-cv-02529, 2006 WL 2460899, at *4 (M.D. Pa. Aug. 23,
2006) (rejecting qualified immunity defense given that "the right to be free from excessive force
was clearly established at the time of the alleged violation").  Therefore, the Moving Defendants
have not established their entitlement to qualified immunity at this time.

### B.   State Law Claims

The Moving Defendants challenge the sufficiency of Plaintiff's state law claims for battery (Count VI) and IIED (Count VII).  (Doc. No. 36 at 22-26.)  They argue that both claims are insufficiently pleaded and that, even if they were, sovereign immunity bars both claims under 42 Pa. C.S. §§ 8540, 8541, and 8550.  (Id.)

### 1.   Battery (Count VI)

Under Pennsylvania law, "[t]he tort of battery has been described as an unconsented touching that is either harmful or offensive."  See Cooper ex rel. Cooper v. Lankenau Hosp., 51 A.3d 183, 191 (Pa. 2012) (citing C.C.H. v. Philadelphia Phillies, Inc., 940 A.2d 336, 340 n.4 (Pa. 2008) (defining "battery" as "'a harmful or offensive contact' with the person of another" (quoting Dalrymple v. Brown, 701 A.2d 164, 170 (Pa. 1997))).  Applying this standard here, the Court concludes that Plaintiff's allegations of the unprovoked use of force suffice to plead a claim of state law battery.  See id.  Further, Plaintiff's allegations, construed in a light most favorable to her, suffice to plead that the Moving Defendants engaged in willful misconduct such that official immunity under state law does not, at least based on the face of the complaint, bar her from pursuing a state law battery claim against them.  See 42 Pa. C.S. § 8550 (noting that "willful misconduct" falls outside the scope of the official immunity).  Having concluded both that Plaintiff's allegations state a battery cause of action and that the Moving Defendants have failed to establish their entitlement to state law immunity based on the allegations in the amended complaint, the Court will deny their motion to dismiss Count VI.

### 2.   Intentional Infliction of Emotional Distress (Count VII)

Finally, the Court turns to Plaintiff's IIED claim, which requires allegations that the Moving Defendants' conduct: "(1) was intentional or reckless; (2) was extreme and outrageous;

14

(3) actually caused the distress; and (4) caused distress that was severe." See Betz v. Satteson, 259 F. Supp. 3d 132, 194 (M.D. Pa. 2017) (quoting Regan v. Twp. of Lower Merion, 36 F. Supp. 2d 245, 251 (E.D. Pa. 1999)), aff'd, 715 F. App'x 213 (3d Cir. 2017).  Plaintiff must also plead "physical injury or harm[.]"  See id. (quoting K.A. ex rel. J.A. v. Abington Heights Sch. Dist., 28 F. Supp. 3d 356, 376 (M.D. Pa. 2014)).  The alleged conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  See Lawson v. Pennsylvania SPCA, 124 F. Supp. 3d 394, 409 (E.D. Pa. 2015) (quoting Kasper v. Cnty. of Bucks, 514 F. App'x 210, 217 (3d Cir. 2013) (not precedential)).

Assuming the truth of Plaintiff's allegations, the Court finds that she has stated an IIED claim.  She alleges that she was hit, punched, and physically and verbally abused and assaulted in a manner that resulted in severe bruising and emotional harm and distress.  These allegations state a plausible IIED claim, i.e., intentional, extreme, and outrageous conduct that caused severe distress.  See Miller v. Burgett, No. 19-cv-05309, 2021 WL 2351993, at *3 (E.D. Pa. June 9, 2021) (holding that a "punch . . . in the face, allegedly without any provocation or justification, easily meets the elements of IIED"); see also Mirra v. Fynes, No. 13-cv-01677, 2015 WL 2118042, at *6 (E.D. Pa. May 6, 2015) (holding punch in face without provocation sufficient to overcome summary judgment as to IIED claim); Monroe v. Mullooley, No. 10-cv-01208, 2011 WL 337333, at *3 (W.D. Pa. Feb. 3, 2011) (stating that a "single punch" would typically "be unlikely to rise to the level of outrageousness required by this tort" but denying motion to dismiss as too early a "juncture in the proceedings" to dispose of such a claim).

The Moving Defendants argue that they are shielded from IIED liability under 42 Pa. C.S.A. § 8541 (providing that "no local agency shall be liable for any damages on account of any

injury to a person or property caused by any act of the local agency or an employee thereof or any other person"). As with Count IV, however, Plaintiff has plausibly alleged that the Moving Defendants engaged in <u>willful</u> conduct, which falls outside the scope of immunity under the relevant statutory provision. <u>See id.</u> § 8542(a). Accordingly, the Court will deny the Moving Defendants' motion to dismiss Plaintiff's IIED claim asserted in Count VII.

### C.     Leave to Amend

The Third Circuit has "instructed that if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." <u>See</u> <u>Phillips</u>, 515 F.3d at 236 (citing <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002)). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." <u>Alvin v. Suzuki</u>, 227 F.3d 107, 121 (3d Cir. 2000) (citing <u>Smith v. NCAA</u>, 139 F.3d 180, 190 (3d Cir. 1998), <u>rev'd on other grounds</u>, 525 U.S. 459 (1999)). As her complaint currently stands, Plaintiff has failed to adequately plead three of her claims: (1) her § 1983 procedural due process claim asserted under Count I; (2) her § 1983 Fourth Amendment claim asserted under Count II; and (3) her § 1985 equal protection conspiracy claim asserted under Count IV. The Court will grant Plaintiff leave to amend her complaint only as Count II as it would be neither inequitable nor futile to permit her to do so. She may file a second amended complaint as to Count II to cure the deficiencies identified in this Memorandum. The Court will not, however, grant Plaintiff leave to amend either her procedural due process claim asserted under Count I or her § 1985 conspiracy claim asserted under Count IV because any amendment would be futile. The Court will therefore dismiss Plaintiff's procedural due process claim asserted under Count I, as well as Count IV, with prejudice.

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant in part the Moving Defendants' motion (Doc. No. 35) to the extent of dismissing Count II without prejudice and dismissing Counts I (only as to the procedural due process claim) and IV with prejudice.   The Court will deny the motion to dismiss as to Counts I (as to the substantive due process claim), III, VI, and VII.  The Court will also deny Plaintiff's motion for leave to file a surreply (Doc. No. 40) in opposition to the Moving Defendants' motion.  An appropriate Order follows.

s/ Yvette Kane_____
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
